UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KARLA GOTTSCHALK,

    Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO, *et al.*,

    Defendants.
_____/

No. C-12-4531 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 25)**

## I. INTRODUCTION

Pending before the Court is the motion of Defendant City and County of San Francisco to strike portions of Plaintiff's first amended complaint, to dismiss the complaint for failure to comply with Rule 8, to dismiss for failure to state a claim, or in the alternative for a more definite statement. Plaintiff, an attorney who brings this suit pro se, brings suit against various local, state, and federal government defendants. Though her complaint is rambling and at times incoherent, it appears that the core of her claims pertain to her application to work for the San Francisco Human Rights Commission in August 2010. Though she passed a civil service examination, she was not offered an interview. She now brings suit apparently alleging various forms of discrimination, violations of statutory and constitutional rights, corruption, and failure of government agencies to perform their statutory duties.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed the case at bar on August 29, 2012.  Her complaint names as defendants the City and County of San Francisco (CCSF), Willie Brown, Jr., Gavin Newsom, Edwin M. Lee, Theresa Sparks, Cecilia Chung, Melissa J. Cayabyab, Magaly Fernandez, Miki Callahan, Christopher Kramer, Jen Lo, Elaine Lee, Linda Simon, Gloria Sheppard, Anita Sanchez, Grace Tam, California Department of Fair Employment and Housing (DFEH), Phyllis W. Cheng, Michael McGrath, United States Equal Employment Opportunity Commission (EEOC), Chai Feldblum, Michael Baldonado, "and Defendants and Respondents."  On September 28, 2012, CCSF filed a motion for a more definite statement and a motion to dismiss.  In response, Plaintiff filed a first amended complaint on October 17, 2012 ("FAC").  Defendant CCSF filed the instant motion to dismiss on November 5, 2012, and Plaintiff responded with her opposition on November 16.  Docket Nos. 25, 32.  Plaintiff's opposition is as disjointed and unintelligible as her complaint, but this Court considers her arguments as best as they can be discerned where they are relevant to the analysis below.  Defendant CCSF filed a reply on November 29, 2012.[1]     Plaintiff has filed proof of service for CCSF, DFEH and EEOC, indicating that those parties were served on September 7, 2012.  Docket No. 4.  She has not filed a proof of service indicating that she served the complaint and summons on any of the individual defendants.  Other than CCSF, no defendant has appeared in this matter.

While the original complaint was 37 pages, the amended complaint is 100 pages long. Plaintiff does not begin numbering the paragraphs in the complaint until page 44, and pages 66-69 are missing.  Much of the complaint is incoherent, repetitive, and written in a stream of consciousness style.  It is not always possible to determine what facts are alleged, or how those facts relate to Plaintiff's various claims.  It is often not clear when Plaintiff is alleging facts about her interactions with others, and when she is describing her reaction to those interactions or providing her subsequent interpretation of the interaction.  It appears that Plaintiff's grievances trace to an application she made for a contracts compliance officer position with the San Francisco Human

---

[1] Although this reply was untimely, this Court nonetheless consider's Defendant's arguments therein as Plaintiff has suffered no prejudice from the late-filed reply.

2

Rights Commission (SFHRC). FAC at 15, 21. Though she passed the applicable civil service examination, she was not offered an interview for the position. FAC at 17-19.

Plaintiff now brings the following causes of action: (1) retaliation; (2) age discrimination; (3) sexual discrimination/orientation harassment; (4) *unknown - pages missing from complaint*; (5) *unknown - pages missing from complaint*; (6) religious discrimination; (7) political discrimination; (8) national origin discrimination; (9) race discrimination; (10) malfeasance and failure to do statutory duties (against DFEH); (11) failure to do statutory duty/avoidance of duty (against EEOC); (12) fraud and deceit; (13) Violation of Unruh Act; (14) vicarious liability; (15) breach of fiduciary duty; (16) tortious racketeering; (17) RICO violation of 18 U.S.C. § 1962(c); (18) RICO violation of 18 U.S.C. § 1962(d); (19) violation of 42 U.S.C. § 1981; (20) violation of 42 U.S.C. § 1983; and (21) violation of 42 U.S.C. § 1985(3). As best as can be determined, the facts in this matter are as follows.

Plaintiff is "a white, transsexual-MTF, female, celibate heterosexual citizen, of the United States, whose politics are both independent and radical, resident of Hawaii and domiciled in San Francisco." FAC at 12. She is also apparently homeless, over 55, and an attorney. FAC at 13, 17, 64. In the late summer of 2010, she applied for a position with the SFHRC. FAC at 12-13. Though she passed a civil service examination, she ultimately was not interviewed or hired. FAC at 15-16, 18. At various points during the application process, Plaintiff sent communications to individuals with the SFHRC, as well as other city defendants, that she claims gave them notice of her transsexuality, religion, age, and other characteristics. FAC at 16-17, 28. Though she alleges that the SFHRC's failure to interview or hire her was both discriminatory and retaliatory, the complaint fails to allege clear facts indicating the basis for this belief. Her explanation for why she believes the HRC discriminated against her is rambling and unclear. For example, she states that:

> no reason <u>ever</u> given Plaintiff was immediately and without an interview, or reason, denied hire despite being in a protected class member sex(gender) and age and in common with the public the First Amendment rights and the guarantee of the Fourteenth Amendment and all applicable Federal, State and Municipal Standards contrary to what a reasonable person would expect in having good government make an honest attempt to hire the most qualified people for any job - and in particular that the reasonable person would expect a Lawyer to

3

1  be more qualified than a non-lawyer in any matter dealing with
2  contracts.

3  FAC at 18-19.

4   After she was not hired, Plaintiff appears to have pursued a grievance through one or more
5  city departments, as well as with the EEOC and DFEH. FAC at 19. At some point in time, the
6  grievance was the subject of a civil service hearing. FAC at 21. At this hearing, an SFHRC staff
7  member apparently stated that the SFHRC had ultimately hired someone who was a lateral transfer
8  for the position for which Plaintiff had applied. *Id.* Plaintiff states this explanation was "pretextual"
9  and states that "Defendants . . . continue[d] an enterprise to deny Plaintiff specific civil rights, the
10 public general civil rights and perpetuate the racket of privilege, perquisite and wealth for the LGBT
11 minority and Mayoral cronies." *Id.* Plaintiff also felt that the hearing officer was biased against her.
12 FAC at 21-22. As a result of this investigation, Plaintiff states that there was an "[a]dmission of
13 discrimination by age and sexual identity," but that all other charges were administratively closed.
14 FAC at 22. She complained about the closure of the other charges in emails to various Defendants
15 in January and February of 2011. FAC at 22.

16  Plaintiff's complaint also contains significant amounts of information with little or no
17 discernable relevance to her claim. For example, she discusses her unsuccessful attempts to
18 volunteer her services as an attorney with two non-profit organizations, though it is not clear how
19 this relates to her employment discrimination claims. FAC at 20. The complaint also spends
20 considerable time detailing alleged conspiracies involving San Francisco's lesbian, gay, bisexual,
21 and transgender ("LGBT") community and local city politicians. FAC at 29-44. At times the
22 complaint jumps rapidly from relevant to seemingly irrelevant information, with little indication of
23 the relationship between the allegations. For example in discussing her attempt to lodge a complaint
24 against the SFHRC for failure to hire her, she states:

25  On or about November 5, 2010, after previously mailing a complaint
    to Theresa Sparks regarding the sham report of discrimination by two
26  gay men over a slur at a Fisherman's Wharf ice cream cafe or vender
    late summer, Plaintiff approached Human Rights Commission of San
27  Francisco to file complaint of discrimination with "Dominique" at
    front desk and told no official complaint procedure and to go to
28

4

> Mayor's office where "Danny" told me they had no power over hiring by commissions.

FAC at 19.

Plaintiff's complaint contains numerous theories of legal wrongs Defendants have committed against her, but fails to set forth clear facts in an organized fashion showing that she is entitled to relief under her various theories. The complaint jumps quickly from one theory to the next, without distinguishing the facts that form the basis for her claims with any level of clarity. When facts are alleged, they are often without context and difficult to decipher. When discussing her objections to the findings from the civil service hearing, for example, she writes:

> Protected class as transsexual status (sex and/or gender), not professional licensure as suggested and the attack on my native Californian heritage (native San Franciscan second generation and fifth generation Californiano/Miwok), obvious my resume was not even read and the common meaning of MTF known to both transgenders on the Human Rights Commission as common knowledge (and Sparks in a news paper photo with FTM police officer and Sparks labelled MTF with Heather Fong) indicate full knowledge of such a term; hermaphroditism denied so the history of transsexualism and Harry Benjamin first diagnose of "psychic Hermaphroditism", that the condition of employee is not a bona fide occupational qualification as it discriminates against bona fide professionals licensed by the state and that such licensure was initially accepted to advance to the managerial exam and alleging that Fernandez "changing what was said" and that mere discretion is a pretext for unbridled discretion which is discriminatory (and an abuse of discretion). Plaintiff repeated my thanking them for maintaining the two admissions of discrimination by age and sexual identity accepted but appeal of administrative closure of all other charges. This is the beginning of Plaintiff believing MAGALY, CALLAHAN, SANCHEZ have LIBELED Plaintiff with TRANSGENDER ORIENTATION and a second reason in addition to Plaintiif's [sic] Bar membership for CAYABYAB's RETALIATION, contrary to TITLE VII and laws and statutes listed above.

FAC at 22-23. This disjointed recitation of the numerous alleged wrongs with few supporting facts makes it difficult, if not impossible, to evaluate the merits of Plaintiff's various claims.

///
///
///
///

5

## III. DISCUSSION

A.   Dismissal for Failure to Comply with Rule 8

Defendant CCSF argues that the complaint should be dismissed for failure to comply with the general rules for pleading. Fed. R. Civ. P. 8(a). Def.'s Mot. at 10-12. In the alternative, CCSF moves for a more definite statement under Rule 12(e). Def.'s Mot. at 23-24.

Rule 8 requires pleadings that state a claim for relief to include a short and plain statement indicating the grounds for jurisdiction, a short and plain statement of the claim, and a demand for the relief sought. *Id.* CCSF argues that Plaintiff's rambling 100 page complaint, which includes much seemingly irrelevant material and is often difficult to understand, fails to provide a "short and plain" statement of Plaintiff's claims.

The Ninth Circuit has held that dismissal for failure to comply with Rule 8 is proper where "the very prolixity of the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996); *see also Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981); *Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980). "Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed.2010)). A complaint may not, however, be dismissed for violation of Rule 8 simply on the basis of excessive length if it is otherwise clear, organized, and intelligible. *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131-32 (9th Cir. 2008). "[A] dismissal for a violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)).

In *McHenry*, for example, the district court had dismissed the complaint with prejudice for failure to comply with Rule 8 when, after two opportunities to amend, the third amended complaint remained "argumentative, prolix, replete with redundancy, and largely irrelevant." 84 F.3d at 1177.

The fifty-three page complaint "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way" and consisted in large part of "narrative ramblings" and "storytelling or political griping." *Id.* at 1174, 1176. In both prior orders allowing the plaintiffs to amend their complaint, the district court had specifically instructed the plaintiffs to clarify which causes of actions were brought against which defendants, but the third amended complaint still failed to provide this information. *Id.* at 1176. The Ninth Circuit affirmed the district court's order dismissing the third amended complaint with prejudice, noting that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges" who are forced to spend significant amounts of time deciphering the nature of the factual allegations and determining which causes of action are brought against which defendants. *Id.* at 1179-80.

Rule 8's requirements for pleadings "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry*, 84 F.3d at 1179. "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *Id.* Though failure to comply with Rule 8 may be grounds for dismissal with prejudice under Rule 41(b), the court should first look to other "less drastic alternatives includ[ing] allowing further amended complaints, allowing additional time, or insisting that appellant associate experienced counsel." *Nevijel*, 651 F.2d at 674. The court, however, need not exhaust all of these options before dismissing a case. *Id.*

Like the complaint in *McHenry*, Plaintiff's first amended complaint is rambling and confusing, and contains much material that is redundant or of unclear relevance. For a number of reasons this makes it difficult to discern what Plaintiff is claiming, and the factual allegations underlying each cause of action.

Plaintiff's complaint begins with a ten page section titled "Jurisdiction." FAC at 2-12. This section, rather than laying out a "short and plain statement of the grounds for the court's jurisdiction," contains citations to and general summaries of over a dozen different state and federal statutes and constitutional provisions. For example, this section includes a description of California's Fair Employment and Housing Act, including information on the relevant enforcement

agency, what types of employers are covered, the various types of discrimination prohibited, examples of specific applications, and the types of damages recoverable.  While brief citations to some of these laws could be helpful under Plaintiff's various causes of action to understand the claims she's bringing, this lengthy initial section is unhelpful and certainly goes beyond a "short and plain" explanation of this Court's jurisdiction.

It is at times difficult to discern which causes of action are brought against which Defendants.  Most of Plaintiff's claims seem to be brought against all defendants affiliated with CCSF, but the complaint gives little specific indication of what role she alleges the various defendants played in the actions underlying the claim.  Initially, she classifies the CCSF-affiliated defendants into three groups.  FAC at 53.  Though Plaintiff at times makes separate actions about the Defendants for groups A, B, and C, many claims do not make any meaningful distinction between the three, and most do not offer significant allegations as to the actions of any individual defendant.  For example, Plaintiff's second, third, sixth, seventh, eighth and ninth causes of action all state that "Defendant groups A, B and C practiced the above acts to limit, segregate, classify employees in a way to deprive or tend to deprive Plaintiff of employment opportunities because of" the protected status or activity relevant to the particular claim.  FAC at 59, 65, 70, 72-73, 75, 78.  Even when individual defendants are mentioned, the Plaintiff often fails to provide any concrete, specific factual allegations as to what those defendants did or failed to do.  *See, e.g.*, FAC at 89-95.

Further, the factual basis for many of Plaintiff's claims is unclear.  For example, it is difficult to discern the factual basis for Plaintiff's retaliation claim.  FAC at 50-58.  In some places, she seems to suggest that she is being retaliated against for disclosing her sex, sexual orientation, religion, and other protected statuses.  FAC at 52 ("The retaliation and/or bad faith of defendants as a result of the revealed knowledge and in the light of a scheme by all named defendants group A to preferentially favor" LGBT people over non-LGBT people).  If this is the basis for her complaint, it is not clear how this is different from her discrimination claims based on these traits.  In other places, she seems to claim that she was retaliated against for challenging the SFHRC's decision not to hire her.  FAC at 52-53 ("The retaliation was conceived upon the filing of an appeal regarding first the qualification of employment that was not a legitimate reason to deny a professional licensed

attorney" work as a contracts compliance officer).  If this is Plaintiff's theory, this raises the question of what the retaliatory act was, since it could not be failure to hire her for the original contracts compliance position.  In still other places, it appears that Plaintiff is alleging that Defendants retaliated against her in anticipation of the fact that she would reveal widespread corruption and illegal activity of various officials and city departments.  FAC at 54 ("All of this was done to conceal criminal activity and violations which an officer of the court would be ethically bound to report and is another major reason for the discrimination against Plaintiff.").  This level of confusion make it difficult for Defendants to adequately respond to Plaintiff's allegations of retaliation.

Given that Plaintiff has only amended her complaint once, and that this Court has not ruled on any previous motions to dismiss, dismissal with prejudice for failure to comply with Rule 8 is not appropriate here.  *See Nevijel*, 651 F.2d at 674.  However, since Plaintiff's complaint is disorganized, confusing, and fails to provide Defendants with adequate notice of the claims against them, dismissal with leave to amend is appropriate here.  Accordingly, Plaintiff's First Amended Complaint is dismissed without prejudice for failure to comply with Rule 8.

If Plaintiff chooses to file an amended complaint, this complaint shall comply with Rule 8(a)'s requirement of a "short and plain" statement of the claim and the facts showing that Plaintiff is entitled to relief.  Plaintiff shall specifically identify the legal and factual basis for each cause of action.  Further, she shall identify which causes of action are brought against which defendants, and provide a specific statement of how each named defendant is involved in the facts giving rise to that cause of action.  For each claim, Plaintiff shall state the basis of waiver of governmental immunity which might otherwise apply.  *See* Cal. Gov. Code §§ 815, 815.2.  Additionally any claims based on allegations of fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).

As the Court dismisses Plaintiff's Complaint for failure to comply with Rule 8(a), Defendant's motions to strike certain portions of the complaint and for a more definite statement are denied as moot.

///

///

9

B.  <u>Dismissal for Failure to State a Claim</u>

In addition to the general deficiencies in Plaintiff's complaint, there are certain claims that lack any legal basis, and are therefore dismissed with prejudice.

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

1.  *Iqbal/Twombly* <u>Plausibility Standard</u>

As an initial matter, it appears that many of Plaintiff's allegations fail to rise to the level of plausibility required by *Iqbal* and *Twombly*. Under those cases, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, a court may dismiss as frivolous claims that are clearly baseless, fanciful, fantastic, or delusional. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). A number of Plaintiff's complaints appear to be based on mere conclusory allegations, such as her claims for various forms of discrimination. Though her complaint alleges facts indicating that she was not hired, and that at least some of the relevant decision makers may have known of her gender identity, sexual orientation, or other

protected characteristics, she offers few or no facts indicating a causal connection between Defendants' knowledge of these facts and the decision not to hire her.

If Plaintiff chooses to file an amended complaint, she is cautioned that claims that do not comply with these standards set forth in *Iqbal* and *Twombly* will be dismissed.

### 2. Vicarious Liability Claim

Plaintiff's fourteenth cause of action is for Respondeat Superior. Defendant CCSF moves to dismiss this claim with prejudice as respondeat superior is not an independent claim, but instead a theory to impose liability on CCSF for the actions of its employees. "Respondeat superior is a form of vicarious liability, not an independent cause of action." *Fox v. Sysco Corp.*, 2:11-CV-00424-RLH, 2011 WL 5838179 (D. Nev. Nov. 21, 2011); *see also* Cal. Gov't Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").

Accordingly, Plaintiff's fourteenth cause of action as a stand alone claim is dismissed with prejudice.

### 3. National Origin Discrimination Claim

Plaintiff brings a claim for national origin discrimination, seemingly based on the theory that national origin discrimination includes discrimination against individuals because they reside in or are from another state within the United States. *See* FAC at 16 ("national origin can be simply coming from another state or territory of the United States"). As an initial matter, Plaintiff's statements about her state of residence are confusing. She states that she was "born in San Francisco and 2d generation San Franciscan and 5th generation Californian," and that she is a "resident of Hawaii and domiciled in San Francisco." FAC at 12. Plaintiff does not explain how she is a resident of Hawaii if she is currently living in San Francisco.

In any event, Plaintiff's national origin discrimination claim is apparently based on allegations of discrimination because she is a resident of Hawaii, it fails as a matter of law. "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88

1  (1973). National origin discrimination does not encompass discrimination against someone because
2  of their origin in a particular state or region of the United States. *See Storey v. Burns Int'l Sec.*
3  *Services*, 390 F.3d 760, 766 (3d Cir. 2004) ("Following *Espinoza*, the few courts that have
4  considered the issue directly have rejected 'national origin' claims based on Confederate or
5  Southern American heritage."); *Fowler v. Visiting Nurse Serv. of N.Y.*, 06 CIV. 4351 (NRB), 2007
6  WL 3256129 (S.D.N.Y. Oct. 31, 2007) ("the regional differences among the people of this country
7  do not create protected classes"); *Langadinos v. Appalachian Sch. of Law*, 1:05CV00039, 2005 WL
8  2333460, at *8 (W.D. Va. Sept. 25, 2005) (plaintiff's background in the Northeastern part of the
9  United States was not a protected trait).

Accordingly, Plaintiff's national origin discrimination claim is dismissed with prejudice.

4.  Unruh Act Claim

Defendant CCSF moves to dismiss Plaintiff's claim under the Unruh Act with prejudice, as that Act covers discrimination in public accommodations, not employment. The Unruh Act provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. It also provides that persons with disabilities have equal access to streets, highways, public places, public conveyances, places of public accommodation, and housing. Cal. Civ. Code §§ 54, 54.1. Plaintiff counters that the Unruh Act is applicable because it applies to "services advantages and/or privileges as there was no employee-employer relationship." FAC at 86; *see also* Pl.'s Resp. at 3. She does not allege that she was denied access to public accommodations. The crux of Plaintiff's complaint is that she was discriminated against in seeking employment with the SFHRC. The California Supreme Court has held in no uncertain terms that "the Unruh Civil Rights Act has no application to employment discrimination." *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (1990).

Accordingly, Plaintiff's Unruh Act claim is dismissed with prejudice.

///

///

12

### 5. RICO Claims

Defendant CCSF argues that Plaintiff's RICO claims (causes of action 17 and 18) should be dismissed with prejudice because government entities are not liable under RICO, and because Plaintiff fails to make out a *prima facie* case for violation of RICO. Plaintiff alleges violations of two sections of RICO, which provide:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d).

Defendant CCSF points to *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, which holds that RICO claims based on mail fraud were not available against government entities because mail fraud requires a specific intent to deceive, and " government entities are incapable of forming a malicious intent." 940 F.2d 397, 404 (9th Cir. 1991). The Ninth Circuit has since applied *Lancaster* in finding that municipalities generally cannot be held liable under RICO. *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996). Further, "[n]either a municipal corporation nor its employees in their official capacities are subject to civil RICO liability." *Ochoa v. Hous. Auth. of City Los Angeles*, 47 F. App'x 484, 486 (9th Cir. 2002).

Plaintiff attempts to distinguish *Lancaster* in her response, but her argument is unintelligible and seems to focus on an unrelated section of the *Lancaster* decision. Pl.'s Resp. at 12.

> Defendant's reliance on Lancaster . . . fails when considering the thrust in footnote 4 : The corruption in favoring LGBT interests and interests of ay [sic] entity willing to support LGBT political power is not authorized and competition was displaced, not by regulation but by agreement to subvert contract compliance procedures. Lancaster also contemplates a common law approach NOT forbidding the same.

*Id.* Footnote 4 in *Lancaster* is in the section of the opinion considering whether the defendants in that case came within the reach of antitrust laws. As part of this analysis, the court considered "whether the California state legislature has displaced competition with regulation in the provision

13

of hospital services." *Lancaster*, 940 F.2d at 400. As this section of the opinion has nothing to do with the court's RICO analysis, Plaintiff's attempt to distinguish *Lancaster* fails.

Plaintiff also argues that cases holding that municipalities cannot form the malicious intent required for RICO liability "are not current and since the Citizens United case there is reason to revisit this especially in light of criminal admission by corporations such as British Petrolem." Pl.'s Opp. at 11. Plaintiff points to no case following *Citizens United* that suggest that that case has implications for a municipality's ability to form malicious intent, or its liability under RICO.

Accordingly, Plaintiff's RICO claims with are dismissed with prejudice as to Defendant CCSF. It is not clear from Plaintiff's complaint whether the individual defendants who are CCSF employees are named in their individual or official capacities. To the degree that they are named in their official capacities, the RICO complaints against them are dismissed with prejudice.

### 6. Section 1981 Claim

Plaintiff's nineteenth cause of action, brought under 42 U.S.C. § 1981, alleges that "Defendants group A and later assisted by Defendants Group B and the DFEH and EEO did willfully discriminate and deprive Plaintiff of civil rights with all of the above and allowing same sex harassment, harassment for age, creating a hostile environment for non-LGBT people and/or nonconformity with LGBT goals." FAC at 95. She states that she was entitled to "benefits of contractual [sic] relationship without discrimination by Defendants." *Id.* Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Plaintiff's complaint does not identify a specific contract that the alleges was the subject of interference.

Though § 1981 does not require that there be an already existing contract in order to find a violation, it does require a plaintiff to allege that he or she "has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Plaintiff argues that this claim is based on the "contractual relationship . . . that

plausibly could have occurred absent discrimination and denial of an interview after qualifying applicants for that interview." Pl.'s Opp. at 4, 14. As Defendant CCSF points out in its untimely reply, however, "it is well settled in California that public employment is not held by contract but by statute." *Miller v. State of California*, 18 Cal. 3d 808, 813 (1977). As Plaintiff has identified no other contract or potential contract, Plaintiff's § 1981 claim is dismissed with prejudice.

C.      Plaintiff's Requests for Relief

In her response to the motion, Plaintiff makes two requests of the Court. First, she asks that this Court order sealed certain records of the SFHRC "for assistance to the ongoing criminal investigations of corruption and protection of the public and plaintiff." Pl.'s Resp. at 17. Second, she requests a declaratory judgment that there is a conflict of interest in having the San Francisco City Attorney represent the individual defendants as well as CCSF. In a previous order this Court has already instructed Plaintiff that she must make such requests in the form of a properly noticed motion. *See* Docket No. 27. If she does so move, she must state a legal basis for each request.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant CCSF's motion to dismiss the First Amended Complaint for failure to comply with Rule 8(a). CCSF's motion to strike certain portions of the First Amended Complaint and motion for a more definite statement are therefore **DENIED** as moot. The following claims from the First Amended complaint are **DISMISSED** with prejudice:

- Plaintiff's 8th cause of action for national origin discrimination;
- Plaintiff's 13th cause of action for violations of the Unruh Act;
- Plaintiff's 14th cause of action for vicarious liability;
- Plaintiff's 17th and 18th causes of action under RICO as to Defendant CCSF and the individual CCSF employee defendants to the degree that they are named in their official capacities; and
- Plaintiff's 19th cause of action under § 1981.

All other claims are dismissed without prejudice. Plaintiff may file an amended complaint that complies with the requirements of Rule 8(a) no later than March 8, 2013. Any further complaint

will be subject to dismissal with prejudice should it fail to state viable legal claims and comply with the applicable rules.

A case management conference shall be held in this matter at 9:00 a.m. on Thursday, February 28, 2013.

This order disposes of Docket No. 25.

IT IS SO ORDERED.

Dated: February 12, 2013

_____
EDWARD M. CHEN
United States District Judge